IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

BRIAN A., et al.          )
                          )
v.                        ) NO. 3:00-0445
                          ) JUDGE CAMPBELL
PHIL BREDESEN, et al.     )

MEMORANDUM

Pending before the Court is Plaintiffs' Motion for a Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction (Docket No. 296). Defendants have filed a Response (Docket No. 304) and Plaintiffs have filed a Reply (Docket No. 324).[1] The Court held a hearing on Plaintiffs' Motion on October 13, 2009. For the reasons stated herein, Plaintiffs' Motion is DENIED.

FACTS

This action was originally filed in 2000 on behalf of a class of "all foster children who are or will be in the legal custody of the Tennessee Department of Children's Services" ("DCS"). On July 27, 2001, the Court entered a Consent Decree which, among other things, required comprehensive reform of the child welfare system in Tennessee. Docket No.112. On January 13, 2009, the Court signed a Modified Settlement Agreement. Docket No. 289. All parties approved all terms of the Consent Decree and Modified Settlement Agreement (hereinafter collectively "Consent Decree").

---

[1] An Amicus Brief (Docket No. 313) has been filed by the Tennessee Council of Juvenile and Family Court Judges.

Central to the Consent Decree, according to Plaintiffs, is the provision that child welfare decision-makers[2] must have the capacity to make determinations as to when making efforts to preserve the biological family, or leaving the child with that family, is neither safe for the child nor likely to lead to an appropriate result for the child. In addition, the Consent Decree provides that all parties in judicial proceedings involving neglect, abuse, unruly and delinquency should be provided with a fair hearing and their constitutional and other legal rights should be enforced and recognized.

On July 7, 2009, Tennessee Public Chapter No. 531 became effective. Section 30 of that Act amended Tenn. Code Ann. § 37-2-205 by adding a new subsection (f), which provides, in part:

> (f)(1)(A) Notwithstanding any state law to the contrary, the Department of Children's Services shall allocate resources for children placed in state custody based on a county's child population and the average state commitment rate per thousand children. In fiscal years 2009-2010 and 2010-2011 the department shall pay for a county's commitments of dependent and neglected children and delinquent children until such commitments exceed three hundred percent (300%) of the state average commitment rate.
>
> (B) When a county exceeds the limit on either dependent and neglected children or delinquent children established in subdivision (f)(1)(A), the county shall be billed for the actual daily cost to the state for the duration of the length of stay of such child in state custody.

Tenn. Code Ann. § 37-2-205.

Plaintiffs contend that the new law establishes fiscal penalties for counties in which judges decide to commit more than a prescribed number of children, in violation of the Consent Decree and the U.S. Constitution.

---

[2] Decision-makers in this case include juvenile court judges who decide whether to commit children to DCS custody.

Defendants argue that Plaintiffs have no standing to challenge this statute or seek this relief. Defendants alternatively argue that implementation of Tenn. Code Ann. § 37-2-205(f) will not violate any obligation Defendants have under the Consent Decree or impermissibly influence juvenile court proceedings. Defendants also maintain that Plaintiffs cannot meet the requirements of Fed. R. Civ. P. 65 for injunctive relief.

## INJUNCTION STANDARD

In determining whether to issue a temporary restraining order or a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether irreparable harm will result without an injunction; (3) whether issuance of an injunction will result in substantial harm to others; and (4) whether the public interest is advanced by the injunction. Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1249 (6th Cir. 1997).

## STANDING

The Court must initially determine whether Plaintiffs have standing to bring their request for injunctive relief. Defendants argue that Plaintiffs fail to meet the judicial prerequisite of standing because they will not be injured by the challenged statute.

The U.S. Supreme Court has held that "the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136 (1992). First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant and not the result of the

3

Case 3:00-cv-00445   Document 330   Filed 10/15/09   Page 3 of 6 PageID #: 6451

independent action of a third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.*[3]

It is axiomatic that the judicial power conferred by Article III may not be exercised unless the plaintiff shows that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. *Blum v. Yaretsky*, 102 S.Ct. 2777, 2783 (1982). It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected. *Id.*

Plaintiffs allege that the new law directly impacts future members of the Brian A class because it will irreparably harm children who are subject to possible commitment to DCS custody. The named Plaintiffs do not explain how the new law will injure *them*.

If a class is certified, "then a loss of personal stake by the named plaintiffs down the road does not necessarily lead to loss of the ability to prosecute the suit on behalf of unnamed plaintiffs who continue to have such a stake." *Rosen v. Tennessee Comm'r of Fin. and Admin.*, 288 F.3d 918, 928 (6th Cir. 2002). But, standing is a "claim-by-claim issue." *Id.* The insertion of a new claim in a case makes the situation more like the original class certification stage. *Id.* In other words, the named plaintiffs must have a personal stake in the new claim. *Id.*

Plaintiffs contend that this case is distinguishable from *Rosen* in three ways. First, they argue that the claims herein are not new claims. Plaintiffs contend that the new law results in Defendants' failure to provide adequate resources for members of the class and, therefore, involves the core allegations of the original Complaint.

---

[3] Each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the manner and degree of evidence required at the successive stages of the litigation. *Lewis v. Casey*, 116 S.Ct. 2174, 2183 (1996).

4

The Court finds, however, that Plaintiffs' claims concerning the new statute are new claims. The named Plaintiffs and class members could not have complained about this statute at the time of the original Complaint because the statute did not exist. The named Plaintiffs and class members could not have included this statute in the Consent Decree because the statute did not exist at that time. The Consent Decree in the original case does not confer standing upon the named Plaintiffs to seek relief for all possible alleged misconduct of Defendants in the future related to children in state custody.

As stated in *Rosen*, the insertion of a new claim in the case "makes this situation more like certain routine class certification cases, where named plaintiffs are certified as class representatives to go forward with claims in which they do have a personal stake, while those in which they do not have such a stake are dismissed without prejudice." *Rosen*, 288 F.3d at 928. The named Plaintiffs herein do not have a personal stake in the new claims asserted by the pending Motion.

Secondly, Plaintiffs contend that because current and future members of the class are injured by this new law, this case differs from *Rosen* and standing exists. As the Sixth Circuit has stated, however, class representatives without personal standing cannot predicate standing on injuries suffered by members of the class but which they themselves have not or will not suffer. *Rosen*, 288 F.3d at 928.

Plaintiffs also argue that this case differs from *Rosen* because the class is inherently transitory. Allegations of future injury do not satisfy the requirements of Article III standing, however. *Rosen*, 288 F.3d at 929. A threatened injury must be certainly impending to constitute injury in fact for standing purposes. *Id*. "[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Id*. That future threat must be like all

5

allegations of injury sufficient to confer Article III standing - - "real and immediate," not "conjectural or hypothetical." *Id*.

The named Plaintiffs challenge the new law as being a breach of the Consent Decree, to which they were parties. This, however, does not provide an independent basis for standing, according to the Sixth Circuit in *Rosen*. Noting the "appeal" of this argument, the Court of Appeals stated, "it is not implausible that an alleged breach of that agreement alone could injure the named plaintiffs and thus confer standing upon them." *Rosen*, 288 F.3d at 930. The Sixth Circuit found, nonetheless, that the named plaintiffs could only sue to enforce *their own rights* as parties to the agreed order. *Id*. at 931. "Parties cannot confer standing purely by agreement, even by agreeing to an agreed order." *Id*.

Although Plaintiffs have raised substantial legal claims about Tenn. Code Ann. § 37-2-205(f), they do not have the required standing to raise those claims in this case. Having determined that Plaintiffs do not have standing to bring this request for injunctive relief, the Court need not address the other factors under Fed. R. Civ. P. 65.

Accordingly, for the reasons set forth above, the Motion for a Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction (Docket No. 296) is DENIED.

IT IS SO ORDERED.

                                                                                                                                                                                                                                                                                       _____
                                                                 TODD J. CAMPBELL
                                                                 UNITED STATES DISTRICT JUDGE

6