IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| BRIAN A., et al. | ) |
| | ) |
| v. | ) NO. 3:00-0445 |
| | ) JUDGE CAMPBELL |
| PHIL BREDESEN, et al. | ) |

MEMORANDUM

Pending before the Court are Defendants' Motion to Dismiss Supplemental Complaint and Second Supplemental Complaint (Docket No. 356) and Defendants' Motion to Take Judicial Notice of Judge April Meldrum's Resignation and to Strike her Testimony (Docket No. 373). For the reasons stated herein, Defendants' Motion to Dismiss is DENIED, and Defendants' Motion to Take Judicial Notice and to Strike is moot.

FACTS

As this Court has previously noted, this action was originally filed in 2000 on behalf of a class of foster children in Tennessee. The original Complaint alleged that Defendants, the Governor of Tennessee and the Commissioner of the Tennessee Department of Children's Services ("DCS"), systematically failed to provide children in DCS custody with legally required services, in violation of their rights under the U.S. Constitution, federal statutes and federal common law.

In 2001, this Court approved the parties' settlement agreement and entered a Consent Decree which required comprehensive reform of the child welfare system in Tennessee. The Court has, since 2001, approved numerous stipulated modifications to the Consent Decree, the most recent being January 13, 2009. *See* Docket No. 289.[1]

---

[1] *See also* Docket Nos. 190, 249, 264-65 and 282.

The Consent Decree provides that this Court "shall have continuing jurisdiction of this action to ensure compliance with the terms of this Settlement Agreement for as long as the Settlement Agreement remains in effect." Docket No. 288-6, Preamble.

On September 9, 2009, Plaintiffs filed a Motion for a Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction (Docket No. 296), seeking to enjoin the Tennessee statute at issue herein, Tenn. Code Ann. § 37-2-205(f). The Court denied Plaintiffs' Motion for lack of standing of the named Plaintiffs. Docket No. 331. Thereafter, the Court granted Plaintiffs' Motions for Leave to File Supplemental Complaints, *see* Docket No. 342, and Plaintiffs filed a Supplemental Complaint and Second Supplemental Complaint (Docket Nos. 344 and 345).

In their Supplemental Complaint and Second Supplemental Complaint, Plaintiffs allege that Tennessee Code Annotated, Section 37-2-205(f), which became effective July 7, 2009, violates the Consent Decree and denies the Supplemental Plaintiffs and similarly situated persons the equal protection and due process rights guaranteed by the U.S. Constitution by establishing a pre-set limit on the number of children committed to DCS for whom the State will allocate resources.

The statute at issue provides:

(f)(1)(A) Notwithstanding any state law to the contrary, the Department of Children's Services shall allocate resources for children placed in state custody based on a county's child population and the average state commitment rate per thousand children. In fiscal years 2009-2010 and 2010-2011 the department shall pay for a county's commitments of dependent and neglected children and delinquent children until such commitments exceed three hundred percent (300%) of the state average commitment rate.

(B) When a county exceeds the limit on either dependent and neglected children or delinquent children established in subdivision (f)(1)(A), the county shall be billed for the actual daily cost to the state for the duration of the length of stay of such child in state custody.

Tenn. Code Ann. § 37-2-205. Plaintiffs assert that the intent of this law is to save state funds by influencing decision-makers to commit fewer children to DCS custody.

Defendants have moved to dismiss the Supplemental Complaint and Second Supplemental Complaint, arguing that the Supplemental Plaintiffs have no standing to bring these claims and that the statute at issue is constitutional and does not violate the Consent Decree or federal law.

## MOTION TO TAKE JUDICIAL NOTICE AND TO STRIKE

The Court has not relied upon the testimony of April Meldrum in making this decision. Therefore, Defendants' Motion to Take Judicial Notice and to Strike is DENIED as moot.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

STANDING

Defendants argue, as they did on Plaintiffs' Motion for Temporary Restraining Order and Plaintiffs' Motion for Leave to File Supplemental Complaint, that the named Plaintiffs (here, Supplemental Plaintiffs) do not have standing to challenge the statute at issue herein. Specifically, Defendants contend that the Supplemental Plaintiffs are already in the custody of DCS, have already been counted against the statutory total of DCS placements, and, therefore, are under no threat of injury as a result of this statute.

As the Court has held before, the judicial power conferred by Article III may not be exercised unless the plaintiff shows that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. *Blum v. Yaretsky*, 102 S.Ct. 2777, 2783 (1982). It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected. *Id.*

The parties dispute whether the Supplemental Plaintiffs have been "committed" to the custody of the State of Tennessee. Defendants maintain that any court order placing a child in DCS custody is a "commitment" and counts against the statutory limit at issue.[2] Plaintiffs, on the other hand, contend that because they have been removed from their homes by DCS on *ex parte* orders of the juvenile court and are awaiting the required hearings on their commitment petitions, where juvenile court judges will make decisions concerning their commitments, they have not yet been committed. As noted above, the Court must accept Plaintiffs' allegations as true for purposes of this Motion.

---

[2] Defendants' citation to Draft Rules for Implementing this statute is not authoritative.

4

Case 3:00-cv-00445  Document 376  Filed 02/23/10  Page 4 of 9 PageID #: 7978

In granting the Supplemental Plaintiffs' Motion for Leave to File Supplemental Complaint, the Court has already considered Defendants' standing argument with regard to these Plaintiffs. Nonetheless, the Court specifically finds that the Supplemental Plaintiffs have standing for purposes of their Supplemental Complaints.

As noted by the Supplemental Plaintiffs, they were removed from their homes by DCS on allegations of abuse and/or neglect. They had not had a factual hearing before a juvenile court judge at that time, and the juvenile court had made no decisions about their specific cases. A child being taken into custody on an emergency basis is a separate event from a child being committed to DCS.[3] The juvenile court judges will determine, at the time of the hearings on their commitment petitions, whether to return Plaintiffs to their homes, place them with relatives or other non-DCS caregivers, or commit them to DCS custody as dependent and/or neglected children.

If the Court accepts Defendants' argument that DCS cannot make a commitment without a court order and any court order is a "commitment" under the statute, then Article III standing would disappear at the moment DCS first takes any child into custody and no child would ever have standing to challenge this law.[4]

Accepting Plaintiffs' factual allegations as true, the alleged harm to Plaintiffs is sufficient to confer standing, and Defendants' Motion to Dismiss on this basis is denied.

---

[3] *See also* Tenn. Code Ann. § 37-1-171 concerning commitment by written orders.

[4] The situation, thus, is similar to one "capable of repetition, yet evading review." *See Demis v. Sniezek*, 558 F.3d 508, 516 (6th Cir. 2009) and *Campbell v. PMI Food Equipment Group, Inc.*, 509 F.3d 776, 781 (6th Cir. 2007).

5

VIOLATION OF CONSENT DECREE

The Court finds that, for purposes of a Motion to Dismiss, Plaintiffs have set forth sufficient facts which, if accepted as true, state a plausible claim to relief for violation of the Consent Decree. Plaintiffs allege that the statute at issue, by attempting to influence the judicial decision-making process and by injecting extraneous considerations into the judicial decision-making process, violates the provision of the Consent Decree which specifies that child welfare decision-makers must have the professional capacity to make determinations for appropriate placement for the child. Such an allegation, if proven, would state a claim for interfering with the professional capacity of judges to make determinations as to the safety and welfare of these children, in violation of the Consent Decree.

Furthermore, Plaintiffs contend that the statute establishes a pre-set limit on the number of children committed to DCS custody for whom the State will provide resources, in violation of the expressed provision of the Consent Decree which requires the State to provide full and equal access to the best available services and the provision which requires Defendants to commit all necessary resources to implement all provisions of the Settlement Agreement. Again, these allegations, if proven to be true, state a claim for violation of the Consent Decree.

Finally, Plaintiffs aver that the statute at issue violates the provision of the Consent Decree which requires that all parties to judicial proceedings involving neglect, abuse, unruly and delinquency should be provided with a fair hearing and their constitutional and other legal rights enforced and recognized. If proven, this allegation would state a claim for violation of the Consent Decree.

For all these reasons, Defendants' Motion to Dismiss Plaintiffs' claims for violation of the consent decree is denied.

CONSTITUTIONAL CLAIMS

Plaintiffs also allege that the statute at issue violates their constitutional rights to due process and equal protection. With regard to due process, Plaintiffs assert that the statute denies their rights to fair hearings before fair tribunals. It is clear that due process demands that a judge be unbiased. *Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008).

Here, Plaintiffs contend that the statute, which "caps" the numbers of neglected, dependent and delinquent children for whom the State will provide funding, results in juvenile court judges who are not unbiased. Defendants contend that the statute does not violate Plaintiffs' constitutional rights because its implementation does not impermissibly influence juvenile court judges.

The Sixth Circuit has held that judicial disqualification based on a likelihood or appearance of bias is not always of constitutional significance. *Railey*, 540 F.3d at 400. In *Railey*, a criminal case, the apparent conflict arose from the kinship between the prosecutor and the judge. The court there had to determine whether a violation of due process based upon the likelihood or appearance of bias based on such kinship was "clearly established." *Id*. at 401. The court held that it was not. *Id*. The court stated that one *could* read Supreme Court precedent as holding that the probability of bias - based on a likelihood or appearance of bias - can be sufficient to disqualify a judge and violate a party's constitutional right to due process, but one could also hold otherwise. *Id*. at 407.

The *Railey* court noted that the Supreme Court has created a test to measure the "possible temptation" inherent in a procedure by which a judge receives a financial benefit as the result of one party's prevailing over the other: "Every [such outcome-based remuneration] procedure which

7

would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law." *Railey*, 540 F.3d at 402 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).[5]

Here, Plaintiffs allege that the statute at issue forces juvenile court judges to take an indirect pecuniary interest in their commitment decisions, based on the total commitments, the costs to their counties, and the counties' ability to pay any amounts over that which the State will pay. Plaintiffs assert that the judges will have a strong motive to rule in a way that will preserve their counties' funds and avoid placing children into DCS custody if their counties do not have the resources to pay for foster care. Such considerations, which have nothing to do with the individual facts or best interest of each child, could violate due process.

Further, the Court notes that juvenile court judges, whether also serving as general sessions judges or not, are elected by the voters in their counties and paid with county funds. Tenn. Code Ann. §§ 37-1-102(b)(16), 37-1-207, 16-15-202 and 16-15-5006. In addition, juvenile court referees are appointed by the juvenile court judges and serve at their pleasure. Tenn. Code Ann. § 37-1-107. The compensation of a juvenile court referee is fixed by the juvenile court judge with approval of the county and paid with public funds. *Id*.

Defendants argue that the statute does *not* interfere with the juvenile court judges' individualized decision-making and professional capacity and that the judges' relationships to their

---

[5] *See also Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972) (extending this result to a procedure by which the financial benefit was directed to the village, rather than the mayor personally, because the mayor's executive responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court). *Railey*, 540 F.3d at 402.

8

counties' fiscal affairs are too remote to implicate constitutional issues. The Court cannot make that determination as a matter of law at this time. Under the standards set forth above, the Court finds that Plaintiffs have stated a plausible cause of action for violation of due process to survive a motion to dismiss. Whether the facts support such a claim will be determined at a later time.

With regard to equal protection, Plaintiffs claim that the statute categorizes and treats similarly situated *Brian A* class members differently from one another without adequate justification, based on factors having nothing to do with their individual cases. The Equal Protection Clause protects against arbitrary classifications and requires that similarly situated persons be treated equally. *Bowman v. United States*, 564 F.3d 765, 772 (6th Cir. 2008).

As with the due process claim, Defendants argue that the statute does *not* interfere with the juvenile court judges' individualized decision-making and professional capacity and that the judges' relationships to their counties' fiscal affairs are too remote to implicate constitutional issues. The Court cannot make such a determination as a matter of law at this time. The Court finds that, under the standards for a motion to dismiss, as set forth above, Plaintiffs have stated a plausible claim for violation of their equal protection rights.

## CONCLUSION

For all these reasons, Defendants' Motion to Dismiss (Docket No. 356) is DENIED.

IT IS SO ORDERED.

                                                                                                            _/s/ Todd Campbell_
                                                                                                            TODD J. CAMPBELL
                                                                                                            UNITED STATES DISTRICT JUDGE