IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

BRIAN A., et al().  )
)
v. ) NO. 3:00-0445
) JUDGE CAMPBELL
PHIL BREDESEN, et al. )

MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Approval of Reasonable Attorneys' Fees and Expenses (Docket No. 412). Defendants have filed a Response in Opposition to Plaintiffs' Motion (Docket No. 421). For the reasons stated herein, Plaintiffs' Motion is GRANTED in part and DENIED in part.

PROCEDURAL HISTORY

This action was originally filed in 2000 on behalf of a class of "all foster children who are or will be in the legal custody of the Tennessee Department of Children's Services." On July 27, 2001, the Court entered a Consent Decree which, among other things, required comprehensive reform of the child welfare system in Tennessee. Docket No. 112. On January 13, 2009, the Court signed a Modified Settlement Agreement. Docket No. 289. All parties approved all terms of the Consent Decree and Modified Settlement Agreement (hereinafter collectively "Consent Decree").

The Consent Decree provides that Plaintiffs are entitled to recover and reserve the right to seek reasonable attorneys' fees and expenses up to the date of the Settlement Agreement and for all subsequent activities in this lawsuit to the extent authorized by 42 U.S.C. § 1988. Docket No. 109, § XX. To this date, Defendants have not opposed and the Court has approved each of Plaintiffs' fee requests for post-judgment efforts.

Plaintiffs are seeking to recover attorneys' fees and expenses for their post-judgment challenge to Tennessee's so-called "Over-Commitment Law" during the time period July 15, 2009, through March 30, 2010. Plaintiffs allege that their challenge to this statute was brought as part of their continuing obligation to ensure that the Consent Decree entered in this case is fully implemented and enforced and that the rights of the class member children are protected.

On September 9, 2009, Plaintiffs filed a Motion for Temporary Restraining Order or Preliminary Injunction (Docket No. 296), contending that the Over-Commitment Law, which went into effect on July 7, 2009, established fiscal penalties for counties in which judges decide to commit more than a prescribed number of dependent and neglected or delinquent children to state custody, in violation of the Consent Decree. The Court denied Plaintiffs' Motion because it found that the originally-named Plaintiffs herein lacked standing to challenge the law. Docket No. 331.

Thereafter, Plaintiffs sought leave of Court to file Supplemental Complaints with six Supplemental Plaintiffs who were challenging the Over-Commitment Law. Docket Nos. 334 and 336. The Court granted Plaintiffs' Motions for Leave to File the Supplemental Complaints (Docket No. 343), finding that the misconduct alleged in those Complaints substantially related to the claims in the original proceedings in this case. Docket No. 342. Plaintiffs renewed their Motion for Preliminary Injunction (Docket No. 346).

Defendants responded with a Motion to Dismiss the Supplemental Complaints (Docket No. 356). On February 23, 2010, the Court denied Defendants' Motion to Dismiss (Docket No. 377), finding that the Supplemental Plaintiffs had standing for purposes of their Supplemental Complaints and that they had set forth sufficient facts which, if accepted as true, stated plausible claims to relief

2

for violation of the Consent Decree. Docket No. 376. The Court set a preliminary injunction hearing for April 19, 2010. Docket No. 379.

In the meantime, the Tennessee Legislature, with support from Defendants herein, began considering and eventually passed a bill to repeal the provisions of the Over-Commitment Law imposing financial burdens on Tennessee's counties. *See* Docket No. 387. On March 30, 2010, Governor Bredesen signed into law the bill which repealed the challenged portions of the Over-Commitment Law.

Defendants argue that Plaintiffs are not entitled to attorneys' fees and expenses for challenging the Over-Commitment Law because they were wholly unsuccessful and this work was corollary litigation, not part of the original Consent Decree. Defendants alternatively argue that Plaintiffs' attorneys' hours are excessive and the hourly rates too high.

## ATTORNEYS' FEES

Attorneys' fees may be awarded under 42 U.S.C. § 1988, which provides that a Court, in its discretion, may allow the prevailing party a reasonable attorneys' fee as part of the costs. The Supreme Court has held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorneys' fees. *Buckhannon Board and Care Home v. West Virginia Dep't of Health and Human Resources*, 121 S.Ct. 1835, 1840 (2001).

Defendants assert that Plaintiffs' challenge to the Over-Commitment Law was corollary litigation, new claims that were not inextricably intertwined with the original action. Therefore, Defendants maintain, Plaintiffs' challenge requires new prevailing party status in order to support an attorneys' fee request. Defendants contend that these Plaintiffs are not prevailing parties because they never secured judicial relief on this challenge to the statute.

Plaintiffs, on the other hand, argue that their challenge to the Over-Commitment Law was directed at enforcing the ongoing Consent Decree in this action and, therefore, was not corollary litigation but part of the original proceeding in which they were prevailing parties.

This Court previously held that the misconduct alleged in the Supplemental Complaints substantially related to the claims in the original proceedings in this action. Docket No. 342. "Although Plaintiffs present new claims, those claims arise from Defendants' alleged failure to protect the constitutional and legal rights of children in DCS custody." *Id.*, p. 5. "In addition, the new law allegedly violates both the spirit and specific provisions of the Consent Decree." *Id*. Thus, Plaintiffs' challenge is not corollary litigation requiring new prevailing party status.

Plaintiffs also contend that they are entitled to attorneys' fees and expenses even if they did not obtain judicial relief because post-judgment monitoring of a consent decree is a compensable activity for which counsel are entitled to reasonable fees under the law and under the Consent Decree in this case.

Attorneys' fees for post-consent decree efforts are compensable even if they did not result in a judicially-sanctioned change in the parties' legal relationship. *See Johnson v. City of Tulsa*, 489 F.3d 1089, 1108 (10th Cir. 2007). Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered change in the legal relationship between the plaintiff and the defendant. *Buckhannon*, 121 S.Ct. at 1840. As in *Johnson*, this Consent Decree itself was the change in the parties' legal relationship, and attorneys' fees incurred for reasonable efforts to enforce that change - that is, protect the fruits of the Decree - are

4

compensable. Johnson, 489 F.3d. at 1108.[1] In addition, the Consent Decree contemplated and provided for the recovery of post-judgment fees.

Defendants cite *Buckhannon* and *Alliance to End Repression v. City of Chicago*, 356 F.3d 767 (7th Cir. 2004) in support of their opposition to these attorneys' fees and expenses. *Buckhannon* did not involve a consent decree. It dealt only with the narrow issue of whether a defendant's voluntary change in behavior *before* a court had considered and ruled on the merits of a lawsuit could result in prevailing party status for the plaintiff. *Buckhannon* did not discuss post-judgment or post-consent decree litigation. *See Grier v. Goetz*, 421 F.Supp.2d 1061, 1071 (M.D. Tenn. 2006).

*Alliance* involved post-judgment proceedings, but the court there found that those proceedings were clearly separable from the original proceeding which led to entry of the consent decree. *Alliance*, 356 F.3d at 771. As with *Grier*, this case differs from *Alliance* because this case involves post-judgment work and proceedings that are all part of one active case, in which compliance has always been an issue and modifications and clarifications of the original judgment order have continuously been made to account for changing conditions and circumstances. *Grier,* 421 F. Supp. 2d at 1075.

---

[1] An earlier established prevailing party status extends to post-judgment work if it is a necessary adjunct to the initial litigation. *Grier v. Goetz*, 421 F.Supp.2d 1061, 1074 (M.D. Tenn. 2006). The test is whether the later issues litigated were inextricably intertwined with those on which the plaintiff prevailed in the underlying suit. *Id*. A plaintiff who engages in post-decree litigation that is essential to the preservation of the integrity of the consent decree as a whole or to preserve the "fruits" of the consent decree will be entitled to prevailing party status whether the plaintiff is successful in detail or not. *Id*.

For all these reasons, the Court finds that Plaintiffs are entitled to reasonable attorneys' fees and expenses for their post-consent decree challenge to the Over-Commitment Law. The Court turns now to the reasonable amount of those fees.

Defendants argue that, even if the Court considers Plaintiffs to be prevailing parties entitled to attorneys' fees and expenses, it should exclude all fees for work between July 15, 2009, and October 15, 2009, the date upon which the Court denied Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction for lack of standing. Plaintiffs were clearly unsuccessful in that attempt, Defendants contend, because they did not even have standing to bring the complaint.[2] Plaintiffs respond that artificially splitting Plaintiffs' enforcement efforts into two phases fails because all the work was appropriately directed to protecting the class from violation of the Consent Decree.

The Court finds that fees for work done prior to the Court's October 15, 2009 denial of Plaintiffs' request for injunctive relief should be excluded. Not only did the Court find that Plaintiffs lacked standing to even bring that request for injunctive relief, but also the work done prior to October 15, 2009, is - - at least to some extent - - duplicative of work done to bring the Supplemental Complaints and supplemental request for injunctive relief. Therefore, Plaintiffs shall exclude the fees for work between July 15, 2009, and October 15, 2009.

Next, Defendants assert that the hours requested by Plaintiffs are excessive. Defendants cite as excessive the fact that six attorneys, four in New York and two in Nashville, and one paralegal billed more than 1400 hours challenging this subsection of a statute. Defendants claim there is

---

[2] Defendants also repeat their argument that the Supplemental Plaintiffs lacked standing as well, but that issue has been previously decided by the Court. Docket No. 377.

significant duplication of effort, particularly 247.82 hours listed by the attorneys for conferring, meeting, e-mailing and strategizing with each other.

The Court finds that Defendants' point is well-taken to a degree. Plaintiffs shall calculate the total fees requested for these 247.82 hours (as set forth on Exhibit 2 to Docket No. 421) and divide that amount in half to adjust for duplication. As for the Defendants' other objections to the number of hours worked, those objections are denied.

Finally, Defendants contend that the hourly rates requested by Plaintiffs' attorneys are excessive. Plaintiffs seek the following hourly rates for their attorneys:

| Attorney | Rate |
|---|---|
| Marcia Lowry | $650 |
| Ira Lustbader | $450 |
| Yasmin Grewal-Kok | $350 |
| Patrick Almonrode | $300 |
| David Raybin | $450 |
| Jackie Dixon | $300 |

In June of 2010 (after the work which is the subject of this Motion was completed), the Court approved Plaintiffs' unopposed fee request for monitoring compliance with the Consent Decree for the time period February 1, 2009, through July 31, 2009. Docket No. 403. That fee request included hourly rates as follows: Lowry - $460; Lustbader - $395; Grewal-Kok - $265; and Almonrode - $250. The Court found those hourly rates to be reasonable. The attorneys should have expected that their work in challenging the statute, which had already been completed at the time of this award, would be compensated at the same hourly rate.

The Court finds no reason at this time to increase the hourly rates previously approved. Therefore, counsel's fees should be calculated at the same, above-described, hourly rates which were used for the June 2010 fee award. Docket No. 403; *see also* Docket No. 402 (Motion for Attorney Fees and Expenses), Exhibit 1 (listing hourly rates). In addition, to be consistent, the Court will approve fees for David Raybin at $395 per hour and Jackie Dixon at $265 per hour.

Defendants have filed no objection to Plaintiffs' claimed expenses of $14,111.07. Therefore, an award of $14,111.07 in expenses is approved.

## CONCLUSION

Plaintiffs' Motion for Approval of Reasonable Attorneys' Fees and Expenses (Docket No. 412) is GRANTED in part and DENIED in part. Plaintiffs shall recalculate their attorneys' fees in light of these rulings and shall file a Revised Motion for Attorneys' Fees on or before May 4, 2011. Defendants shall have until May 11, 2011, to file any Response.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE